# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### Nos. 24-1182

### UNITED STATES,

Appellee,

**v.**

### HECTOR FIGUEROA-MARBELT
Defendant-Appellant.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

## BRIEF FOR APPELLEE

---

W. Stephen Muldrow
United States Attorney

Juan Carlos Reyes-Ramos
Assistant United States Attorney
Chief, Appellate Division

Jeniffer Vélez-Pérez
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 772-3940
Fax (787) 771-4050

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iv

Jurisdictional Statement ......................................................................................... 1

Statement of the Issues on Appeal ....................................................................... 2

    I. Whether Figueroa established that the district court plainly erred or abused its discretion in admitting evidence............................... 2

    II. Whether Figueroa established plain error in the prosecution's closing statements referring to the intrinsic evidence............................ 2

    III. Did Figueroa establish cumulative plain error requiring reversal?       2

Statement of the Case ............................................................................................. 3

    I. Government cooperator negotiates gun purchase from leader of Los 27's gun trafficking operation ....................................................... 3

    II. Video shows Figueroa delivering gun and ammunition to a confidential human source in exchange for money ............................... 5

    III. Figueroa sends Grilla money over an electronic payment system        .............................................................................................. 7

    IV. Figueroa is indicted of firearms trafficking ....................................... 7

    V. Ten days after Figueroa is indicted, the FBI arrests him and seizes additional firearms, ammunition, and firearm parts................... 8

    VI. The district court grants the government's Motion *in Limine*, seeking to introduce as intrinsic evidence ATH Móvil transactions and evidence of the items seized during Figueroa's arrest.        .............................................................................................. 9

    VII. The jury finds Figueroa guilty of firearms trafficking................... 15

Summary of the Argument.................................................................................... 31

Argument ............................................................................................34

    I. Figueroa's evidentiary challenges, most unpreserved, fail since the evidence was directly probative of Count Nine. The risk of prejudice did not outweigh its high probative value............................34

        A. Figueroa has conclusively waived any challenge to the admission of the arrest evidence and ATH Móvil transactions. ...........................................................................36

            *1. Figueroa's Rule 404(b) argument is unpreserved and he fails to acknowledge the plain error standard.* ...........36

            *2. Figueroa's challenge necessarily fails since he ignores that the district court ruled the evidence was admissible as intrinsic.* ................................................38

            *3. Even setting aside waiver, because the evidence was probative of the elements of firearm trafficking, it was admissible as intrinsic.* ...........................................40

            *4. Even assuming arguendo Rule 404(b) applied to the evidence, Figueroa's challenge fails because it could have been introduced for permissible purposes such as intent, opportunity, and motive.* ........44

            *5. The district court did not abuse its discretion in finding the evidence's probative value was not outweighed by the risk of prejudice.* ..............................46

        B. Figueroa failed to establish that the district court's admission of evidence of Los 27 and Grilla's bad acts was plain error because the evidence was necessary to establish the context of Figueroa's crime.................................................................................49

        C. Because the case against Figueroa was overwhelming, any evidentiary error was harmless...................................55

ii

II. Figueroa cannot establish any error, let alone plain error, in the prosecutor's closing statements. ........................................................58

III. Figueroa's unpreserved cumulative errors argument also fails since, even if we overcome multiple waivers, he cannot establish cumulative error through non-errors.....................................65

Conclusion...............................................................................................67

TABLE OF AUTHORITIES

**FEDERAL CASES**

Stephens v. Hall, 294 F.3d 210 (1st Cir. 2002)..................................................54

United States v. Acosta-Colon, 741 F.3d 179 (1st Cir. 2013) ...........................37

United States v. Aguilar-Aranceta, 58 F.3d 796 (1st Cir. 1995) ......................44

United States v. Benjamin, 49 F.4th 580 (1st Cir. 2022)........................ 36, 38, 66

United States v. Breier, 813 F.2d 212 (9th Cir. 1987) ......................................42

United States v. Breton, 740 F.3d 1 (1st Cir. 2014).........................................35

United States v. Castro-Caicedo, 775 F.3d 93 (1st Cir. 2014) ..........................35

United States v. Christi, 682 F.3d 138 (1st Cir. 2012) ......................................37

United States v. Cotter, 425 F.2d 450 (1st Cir. 1970) .......................................62

United States v. DeMasi, 40 F.3d 1306 (1st Cir. 1994)....................................66

United States v. Etienne, 772 F.3d 907 (1st Cir. 2014) .....................................35

United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40 (1st Cir. 2004) .........40

United States v. Flemmi, 402 F.3d 79 (1st Cir. 2005) ................................. 51, 66

United States v. García-Sierra, 994 F.3d 17 (1st Cir. 2021) .............................66

United States v. Henderson, 320 F.3d 92 (1st Cir. 2003).................................64

United States v. Henry, 848 F.3d 1 (1st Cir. 2017) ..........................................39

United States v. López, 957 F.3d 302 (1st Cir. 2020)........................................39

United States v. Lugo-Guerrero, 524 F.3d 5 (1st Cir. 2008)............................43

United States v. Maldonado-Pena, 4 F.4th 1 (1st Cir. 2021)............................61

United States v. Mare, 668 F.3d 35 (1st Cir. 2012) .............................. 34, 43, 47

United States v. Monteiro, 871 F.3d 99 (1st Cir. 2019) .......................................35

United States v. Mount, 896 F.2d 612 (1st Cir. 1990)...........................................62

United States v. Ortiz-Islas, 829 F.3d 19 (1st Cir. 2016) ....................................45

United States v. Pabon, 819 F.3d 26 (1st Cir. 2016) ...........................................66

United States v. Ramirez-Frechel, 23 F.4th 69 (1st Cir. 2022) .................. 40, 41

United States v. Ramos-Baez, 86 F.4th 28 (1st Cir. 2023).................... 50, 51, 52

United States v. Rathbun, 98 F.4th 40 (1st Cir. 2024) .................... 46, 48, 52, 55

United States v. Robles-Alvarez, 874 F.3d 46 (1st Cir. 2017) ................... 44, 45

United States v. Rodríguez, 675 F.3d 48, 63 (1st Cir. 2012).......... 53, 58, 61, 65

United States v. Rodríguez-Torres, 939 F.3d 16 (1st Cir. 2019) ......................50

United States v. Rosario-Perez, 957 F.3d 277 (1st Cir. 2020)............................59

United States v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993)..................................60

United States v. Smith, 292 F.3d 90 (1st Cir. 2002) ...........................................47

United States v. Smith, 982 F.2d 681 (1st Cir. 1993) .........................................62

United States v. Souza, 749 F.3d 74 (1st Cir. 2014).................................... 40, 42

United States v. Stokes, 124 F.3d 39 (1st Cir. 1997) .........................................66

United States v. Taylor, 284 F.3d 95 (1st Cir. 2002) .........................................49

United States v. Taylor, 54 F.3d 967 (1st Cir. 1995)..........................................60

United States v. Van Anh, 523 F.3d 43 (1st Cir. 2008)......................................64

United States v. Vázquez-Larrauri, 778 F.3d 276 (1st Cir. 2015)............. 59, 60

United States v. Villarman-Oviedo, 325 F.3d 1 (1st Cir. 2003) ................ 38, 39

United States v. Wall, 130 F.3d 739 (6th Cir. 1997)...........................................63

United States v. Whiting, 28 F.3d 1296 (1st Cir 1994) ......................................63

United States v. Wilkerson, 411 F.3d 1 (1st Cir. 2005) .....................................60

United States v. Wilmoth, 636 F.2d 123 (5th Cir. 1981) ...................................60

United States v. Zannino, 895 F.2d 1 (1st Cir. 1990)..........................................62

## FEDERAL STATUTES

18 U.S.C. § 3231.......................................................................................................1

28 U.S.C. § 1291.......................................................................................................1

## FEDERAL RULES

Fed. R. Evid. 404(b) ...............................................................................................44

Fed. R. Evid. 609. ...................................................................................................53

## JURISDICTIONAL STATEMENT

Defendant-appellant Hector Figueroa-Marbelt appeals the judgment following a jury trial in which he was convicted of aiding and abetting the trafficking of firearms.[1] The district court, which had original jurisdiction under 18 U.S.C. § 3231, entered the final judgment on January 24, 2024. (AD 29-35). *See* Fed. R. App. P. 4(b)(1)(A). Figueroa filed a timely notice of appeal on February 7, 2024. (AD 36-37). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

---

[1] Citations to the record will be as follows: AA (Appellant's Appendix); AB (Appellant's Brief); AD (Appellant's Addendum); DE (Docket Entry or Entries in District of Puerto Rico Criminal Case No. 21-327).

## STATEMENT OF THE ISSUES ON APPEAL

I.    **Whether Figueroa established that the district court plainly erred or abused its discretion in admitting evidence.**

II.    **Whether Figueroa established plain error in the prosecution's closing statements referring to the intrinsic evidence.**

III.    **Did Figueroa establish cumulative plain error requiring reversal?**

**I.    Government cooperator negotiates gun purchase from leader of Los 27's gun trafficking operation**

Moises Santiago-Rodriguez (a.k.a. Moi), a government cooperator, was a former maximum leader of Los 27, a prison gang whose goal was "to control all prisons, to keep control of the drugs and power." (AA 104; DE 1144 at 57). During the relevant time frame, imprisoned members of Los 27 communicated with each other and people in the free community using illegal cell phones that are smuggled into the prison through "visitors or corrupt officers, corrupt personnel." (AA 83-84). Using those cell phones, Los 27 members committed various crimes, including firearms trafficking, drug trafficking, scam calls, and violent acts. (AA 104).

Santiago began cooperating with federal authorities in 2017 while serving a long state sentence. (DE 1144 at 55). As part of his cooperation, Santiago coordinated the purchase of a gun and bullets from Victor Elias-Boza (a.k.a Grilla) while they were both imprisoned. (AA 85-86, 89; DE 1144 at 66, 80). Grilla was the main contact for Los 27's firearms trafficking. (AA 105; DE 1215 at 33). The sale of the gun and ammunition was set up through

several phone calls and text messages between Grilla and Santiago from December 2 through December 6, 2019, that were recorded since Santiago's phone was being monitored by the FBI as part of his cooperation. (AA 82; DE 1154-1, 1154-2, 1154-3, 1154-4, 1154-5, 1154-6, 1154-7, 1154-8). Since both were imprisoned in separate facilities, Santiago only knew Grilla over the phone. (AA 85).

Throughout the negotiation, Grilla offered weapons of different sizes, including small weapons and rifles, and of different calibers, including 22, 40, and 45. (DE 1144 at 89-92). Grilla also offered ammunition, drum-style magazines, original manufacturer magazines, and accessories. (DE 1144 at 89-93). Grilla was recorded saying that he received gun parts by mail and assembled them. (DE 1144 at 91-92; DE 1154-1 at 7). And that his pana or friend would also receive them. (DE 1144 at 91-92; DE 1154-1 at 9-10). Grilla told Santiago that he could "tell [his *pana*], 'look, eh, go there' and the [*pana*] will go there." (DE 1154-1 at 10).

Grilla agreed to sell a gun and bullets to Santiago for $1,500 the following Friday, December 6, 2019. (AA 87-88; DE 1215 at 91; DE 1154-2 at 3-4). Grilla would arrange for his *pana* in the free community to deliver the

gun and bullets to Santiago's wife, who was an FBI confidential human source. (AA 88). The sale was to take place in the parking lot of Plaza Las Americas in front of Sears. (AA 87-88). Grilla's *pana* planned to take his wife and daughter to the sale because he "always goes with his wife and with his daughter." (DE 1154-3 at 1).

## II. Video shows Figueroa delivering gun and ammunition to a confidential human source in exchange for money

The day of the exchange, FBI agents met with the confidential human source that would be posing as Santiago's wife. (DE 1215 at 85). The FBI agents "wire[d] the car for video and audio." (DE 1215 at 86). They also provided the confidential human source $1,500 to pay for the gun. (DE 1215 at 86). FBI agents followed the confidential human source to the exchange location and parked a short distance away to observe the transaction and protect her. (DE 1215 at 87-88).

Leading up to the sale, Santiago texted Figueroa to know where he was and when he would arrive at the exchange location. (DE 1154-5, 1154-6, 1154-7). Figueroa was added to a conference call between Santiago, Grilla, and the confidential human source so they could coordinate the meet-up. (DE 1215

at 7-8). Figueroa said that he was driving a red Mazda and specified where he was and that there was a bit of traffic. (DE 1154-8).

Shortly after, Figueroa arrived in the red Mazda with a lady passenger, his wife. (DE 1215 at 62; DE 1217 at 108). He got out of his car, walked towards the confidential human source's car, and got in the front passenger seat. (DE 1215 at 62-63). Figueroa gave the confidential human source a red bag with the gun and bullets. (DE 1215 at 63). In exchange, the confidential human source gave Figueroa $1,500, the agreed upon price. (DE 1215 at 63, 91). The confidential human source had been on the phone with Santiago and Grilla when Figueroa got in her car, so Figueroa was recorded counting the money. (DE 1215 at 63-64; DE 1154-17 at 1).

Figueroa was recorded on video asking the confidential human source to "test it quickly, and… let me know." (DE 1154-20 at 1). Figueroa also offered more guns, stating "I have, have more available, more twenty-fours of those available… I have twenty-fours, thirty-fives, thir-eh [sic], thirty-four, I have everything." (DE 1154-20 at 1). Then he joked, "Grilla knows… ask [Santiago] if he wants a nuclear bomb." (DE 1154-20 at 1). Santiago texted Figueroa sometime after to try to purchase more guns and Figueroa

responded some days later instructing him to "Contact Grilla." (DE 1154-9, 1154-10, 1154-11, 1154-12, 1154-13; DE 1215 at 16).

### III. Figueroa sends Grilla money over an electronic payment system

Ten days after the sale, on December 16, 2019, Figueroa sent two transfers of $250 with the message "Grilla" through ATH Móvil.[2] (AA 114-116; DE 1154-29). One transfer failed and one was completed. (AA 114-116; DE 1154-29). The government submitted a list of other ATH Móvil transactions in April, May and July 2020 between Figueroa's phone number and a second phone associated with Grilla.[3] (DE 1154-29).

### IV. Figueroa is indicted of firearms trafficking

On September 9, 2021, Figueroa was indicted along with 28 other defendants. Figueroa was charged with engaging in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D) (Count Nine). (AD 24). The indictment stated that "in or about

---

[2] ATH Móvil is a phone application used to transfer money between registered users. (DE 1215 at 142).

[3] In at least one transfer the word "Grilla" was in the message. (AA 116; DE 1154-29).

December 2019 to in or about February 2020" Grilla and Figueroa, aiding and abetting each other, not being licensed dealers of firearms, "did willfully engage in the business of dealing in firearms." (AD 24).

**V. Ten days after Figueroa is indicted, the FBI arrests him and seizes additional firearms, ammunition, and firearm parts**

On September 16, 2021, FBI agents arrested Figueroa after tracking his cellphone to a residence. (AA 118-19). Figueroa's daughter and another man had also been at the house. (AA 120; DE 1215 at 170).

After the house was empty, agents executed a federal search warrant. (AA 118). Federal agents seized eight firearms from the house, including: one Glock model 22; four Glocks model 23; one Glock model 34; one Glock model 43; and one AK-47 rifle. (AA 139). Some pistols did not have a serial number. (DE 1215 at 172). Most of the firearms were found in a closet of a bedroom that also contained men's clothing. (DE 1215 at 172-73).

Agents also found "thousands of rounds of various styles of ammunition" and firearm parts that could have assembled between three and seven more firearms. (DE 1215 at 172-73). There were also "multiple firearms accessories all around the house in post office boxes that had just

come from being shipped." (DE 1215 at 173-74). There were also "9mm drill

bits scattered all around the house." (DE 1215 at 174).[4] "9mm is the most

common ammunition used in any kind of firearm." (DE 1215 at 174). The FBI

also seized $4,100 in cash from the house. (AA 24, 31; DE 1215 at 174; DE

1217 at 76).[5]

**VI.** **The district court grants the government's Motion *in Limine*, seeking to introduce as intrinsic evidence ATH Móvil transactions and evidence of the items seized during Figueroa's arrest.**

On August 21, 2023, the government filed a Motion *in Limine*

requesting permission to admit evidence of Figueroa's possession of

firearms and firearm accessories as of the date of his arrest. (AA 24-30). The

---

[4] The witness, Special Agent Christopher Kuhn, was a SWAT member and "highly proficient in firearms… authorized to clear… and render sa[f]e firearms for evidence purposes." (DE 1215 at 165).

[5] Figueroa was separately indicted and charged in Crim. Case No. 22-480 with possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) related to the items seized during Figueroa's arrest in the present case (Cr. 21-327). (AA 138-139). Figueroa pled guilty to possessing a firearm in furtherance of a drug trafficking crime and the district court sentenced him to 72 months' imprisonment, consecutive to the sentence in the current criminal case. (Crim. Case No. 22-480, DE 45 and 55).

government sought to introduce evidence of the items seized during Figueroa's arrest as intrinsic evidence because it was "inextricably intertwined with, and directly relevant to" the firearms trafficking count (Count Nine). (AA 24).

To support its proposition, the government cited this Court's decision in *United States v. Ramirez-Frechel*, 23 F.4th 69 (1st Cir. 2022). (AA 25-27). Part of the evidence to be presented at trial included a video of Figueroa, during the sale of a firearm, offering other guns by stating "I have… more of those twenty-fours available." (AA 25). The government argued that the arrest evidence was "relevant to establish that [Figueroa] could make good on his 2019 claims to [the confidential human source] that he could sell [Santiago] additional firearms." (AA 27). And that it supported the government's theory that "Figueroa was not merely an occasional supplier of firearms, but also dealt in firearms 'with the purpose of making a livelihood and profit.'" (AA 27). The arrest evidence was part and parcel of Figueroa's gun trafficking activity, and it was probative of an essential element of the charged offense, so it should be admitted under Federal Rules of Evidence 401 and 402. (AA 27).

Alternatively, the government argued that it should be admitted under Federal Rule of Evidence 404(b) because the arrest evidence had "special relevance" since it was probative of: "(1) Figueroa's ability to hold himself out as a reliable supplier of firearms, (2) Figueroa's opportunity to obtain firearms to traffic, and (3) Figueroa's motive to engage in gun trafficking." (AA 28). The government argued that the probative value was not outweighed by the potential for unfair prejudice. (AA 29). And that any danger could "easily be mitigated by instructing the jury to consider the firearm evidence for a permissible purpose." (AA 29).

On October 21, 2023, Figueroa opposed the government's motion to admit arrest evidence under Rule 403, arguing that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. (AA 33). He also averred that a limiting instruction would not be sufficient to limit the risk of a layman distinguishing it as propensity. (AA 34).

On October 21, 2023, the government supplemented its Motion *in Limine* requesting the district court to also allow it to present evidence of ATH Móvil transactions that occurred after February 2020, the date listed in

11

the indictment. (DE 1131 at 1). The government adopted its prior arguments and reliance on *Ramirez-Frechel*, that the evidence was intrinsic since it was directly relevant to prove that Figueroa was "engaged in the business of dealing in firearms." (DE 1131 at 3-5). The ATH Móvil transactions showed the movement of money between Figueroa and another number associated with Grilla. (DE 1131 at 6). So it was relevant to "show the cha[r]ged offense – that [Figueroa] helped (aided and abetted) Grilla to engage in the business of dealing in firearms." (DE 1131 at 6). Alternatively, the evidence was admissible under Rule 404(b) because the transactions showed that Figueroa had the "motive, opportunity and intent to obtain firearms and sell them." (DE 1131 at 6). And this Court had found similar evidence not to be unfairly prejudicial in *Ramirez-Frechel*. (DE 1131 at 6).

On October 23, 2023, the parties had a pre-trial conference where the government explained the evidence it would be using to prove its case. (DE 1285 at 4-5). The government discussed its then pending Motion *in Limine*, reiterating its arguments that the evidence was intrinsic because the fact that "multiple firearms" and firearm parts "were seized in his house" went to

12

show that Figueroa was engaged in the business by helping "sell[] multiple firearms." (DE 1285 at 6).

The government's theory was that Figueroa was helping Grilla, who was the "point of contact of firearms trafficking" for Los 27 as his "person on the outside." (DE 1285 at 8). During the recorded sale, Figueroa referenced a lot of other firearm models. (DE 1285 at 7). Those same firearm models were seized in Figueroa's house. (DE 1285 at 7). Moreover, Grilla had stated that he received firearms in the mail and assembled them. (DE 1285 at 7-8). The FBI seized firearm parts, mailings, and tools used to assemble firearms at Figueroa's house the day of his arrest. (DE 1285 at 7-8).

The ATH Móvil messages were also relevant since they were from Figueroa's number to another number with the message "Grilla." (DE 1285 at 10). Defense counsel countered arguing the messages were irrelevant because the date of the arrest was one year and seven months after the dates included in the indictment. (DE 1285 at 9-10).

The government supplemented its Motion *in Limine* and oral statements at the pre-trial conference in a subsequent filing by arguing that the arrest and ATH Móvil evidence also went to show "the defendant's

mental state at the time of the charged offense." (DE 1134 at 2). And First Circuit caselaw supported that the "admission of acts or conduct subsequent to the offense charged" is allowed under Rule 404(b). (DE 1134 at 2). The government also cited *United States v. Lugo-Guerrero*, 524 F.3d 5 (1st Cir. 2008) for the proposition that that evidence having occurred fifteen months before the charged offense was "not that distant in time" so the arrest evidence in Figueroa's case was not too remote. (DE 1134 at 2-3).

Shortly after, on October 27, 2023, the district court entered an order admitting the ATH Móvil transactions and the arrest evidence as intrinsic under Rules 401 and 402. (DE 1137). Citing *Ramirez-Frechel*, the district court found that the ATH Móvil transactions and arrest evidence relate to "at least, one of the elements of the offenses to be proven by the government." (DE 1137). The district court noted that "all intrinsic evidence may be considered prejudicial, but only 'unfair prejudice' would make exclusion of the evidence warranted." (DE 1137). And here, the evidence related to the "nature of the charges and the events/transaction of December 16, 2019…." (DE 1137). Alternatively, the district court admitted the evidence under Rule 404(b). (DE 1137).

## VII. The jury finds Figueroa guilty of firearms trafficking

A jury found Figueroa guilty after a three-day trial that started on October 31, 2023. The government presented nine witnesses, two cooperators, one confidential human source, four FBI agents, one bank employee, and an employee with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)'s federal firearms licensing center. (DE 1144 at 2; DE 1215 at 2; DE 1217 at 2, 50).

During its opening statement, the government stated that the evidence would show that Figueroa worked together with Grilla, an incarcerated member of Los 27 who brokered firearm sales from prison. (DE 1144 at 19-20). Figueroa was "Grilla's person in the outside" and he had delivered a firearm and ammunition to a confidential human source posing as the wife of Santiago, a cooperating former Los 27 member. (DE 1144 at 20, 22). Because the sale was negotiated by a cooperator, the government had recordings of the calls between Grilla and Santiago from brokering the deal until it was completed. (DE 1144 at 22-23). The government also had a video of Figueroa delivering a bag with the gun and ammunition. (DE 1144 at 23). During the recorded sale, Figueroa had offered to sell more firearms. (DE

1144 at 19-21). And after it was completed, Figueroa had sent money to Grilla through ATH Móvil. (DE 1144 at 21). When the FBI arrested Figueroa, it had seized from his home "eight firearms, multiple firearm parts, multiple rounds of ammunition, money." (DE 1144 at 21). But neither Figueroa nor Grilla had a license to sell firearms, as reflected in ATF records. (DE 1144 at 21-22).

Figueroa's counsel did not object to the opening statement and chose not to issue an opening statement. (DE 1144 at 26). Then the district court gave cautionary instructions about Los 27 and "individuals that were in jail at the time, which includes the co-defendant in this case," Grilla. (DE 1144 at 26). The district court explained to the jury that only Figueroa was there and he "deserve[d] a fair trial" so

> any other actions or bad actions or actions that you may understand are against the law, committed by some other individuals are not to be taken directly as evidence against this defendant, or are to be used to prove that the defendant then actually committed the offense for which he's charged or that he has a bad character.

> To the extent that the evidence can be used if you understand that that evidence had special relevance and points to matters like knowledge, intent, motive. But it's – it doesn't mean that

because someone did something wrong actually then the co-defendant must be guilty.

(DE 1144 at 26-27).

The government's first witness was Special Agent Matt Laird, who had investigated Los 27 from 2019 through 2021. (DE 1144 at 29). At the outset of his testimony, the district court had a sidebar to understand the extent of the witness's testimony with regards to Los 27's activities and it limited the scope of the investigation "not go into other areas like violent actions." (DE 1144 at 30-31). The district court cautioned to "avoid any unnecessary spillover." (DE 1144 at 31). The government reassured the district court that the witness would only say that "among the crimes he was investigating was firearms trafficking." (DE 1144 at 30). Later during the cross-examination of Agent Laird, the district court again limited his testimony "on the [Los] 27's dealings and doings… to avoid damaging the case or any spillover." (DE 1144 at 45).

Santiago, a former maximum leader of Los 27 and government cooperator, also testified. (DE 1144 at 57). Imprisoned since 1993, Santiago had been convicted of attempted murder, robbery, assault, weapons

violations, second degree murder, committing threats, drug trafficking, and possessing cell phones in prison. (DE 1144 at 50-51). He had committed many of the crimes from prison, as a member of Los 27. (DE 1144 at 52). He testified that he had also committed "fraud, bank account transactions, firearms, selling drugs inside and outside of prison, *canteos*, scam calls." (DE 1144 at 53). He explained that a *canteo* was using a cell phone inside prison "to call people in the free community" to make threats or lies to "get money out of people." (DE 1144 at 54).

During Santiago's cross-examination, the defense attorney impeached him with his prior crimes, including attempting to escape prison, aggravated assault, attempted murder, murder, possession of contraband in prison, his role as maximum leader of Los 27, and the *canteos*. (DE 1215 at 17, 19-22, 31). Figueroa's attorney stressed that *canteos* were in fact "lies" and that he "developed these fake stories," profiting over $50,000 from them. (DE 1215 at 22-23, 31).

Santiago testified that although he had never met Grilla in person because they were in different institutions, they had coordinated the firearm sale through contraband cellphones they both had. (AA 85). So the

government called as a witness another member of Los 27, Luis Oscar Valle-Zaccheus, to "identify who is Grilla." (DE 1215 at 106). At the outset of his direct, Valle testified about his criminal history, that included selling drugs, robbing drug points, racketeering, and murder. (DE 1215 at 111, 116). He had begun cooperating regarding Los 27 from prison after having been the "leader of an entire prison in Guayama" for over 14 years. (AA 101; DE 1215 at 111). He testified that as leader, he was in charge of dealing with "faults" – or disciplining Los 27 members. (AA 102). Los 27 engaged in firearms trafficking, drug trafficking, and "*canteos*." (AA 104). He participated in *canteos* – calling people randomly until they were able to find a more naïve person that they could deceive into believing something was happening with a relative of theirs and convince them to drop off money at a specific location. (AA 102-03).

Valle testified that he knew Grilla to be the main contact for firearms trafficking for Los 27. (AA 105). And that the organization would coordinate with people "who are on the outside and worked for" Los 27 through the ATH Móvil application and other payment methods like Western Union. (AA 105). He knew that Grilla had a "contact person on the outside" because

he lived with Grilla from 2017 through 2018. (AA 106; DE 1215 at 134). Grilla's outside person would deliver the firearms sold by Grilla. (AA 107). According to Valle, firearms were primarily used if "one of our fellow 27 members was going to go out to the street" so that they would not be unarmed. (AA 107). Defense counsel extensively cross-examined Valle on criminal acts, including his involvement with "*canteos*." (AA 110; DE 1215 at 128-32, 135).

The government also brought Karen Serra-López, an employee with Evertec, the company that manages the ATH Móvil application. (DE 1215 at 142). Through Serra, the government introduced, as business records, ATH Móvil transactions stemming from or to Figueroa's phone number. (DE 1215 at 143-44). Figueroa's counsel objected under Rule 403, arguing the probative value was outweighed by unfair prejudice. (AA 112).

The district court allowed the introduction of the ATH Móvil transactions, stating that it had already ruled on "the admissibility of the evidence." (AA 112). The district court addressed the Rule 403 objection by stating that the evidence had "special relevance" and went "to one of the permissible purposes under the rules of evidence." (DE 1215 at 146). The

court continued its explanation in sidebar. The district court further discussed its prior ruling, (*see* DE 1137), that the ATH Móvil transactions beyond the period in the indictment and the arrest evidence, which was 16 months after the events or the time frame in Count 9, were relevant "in order to establish context and the overall scheme taking place." (DE 1215 at 146). The argument that the evidence was unfairly prejudicial did not survive. (DE 1215 at 146-47). The transactions through May 2020 were proximate in time to the time in the indictment, just a "few months after." (DE 1215 at 147). And there was case law that had allowed and considered evidence beyond the period being allowed by the district court. (DE 1215 at 147). Moreover, the evidence "appear[ed] to arise from the same series of transactions as the charged offense." (DE 1215 at 147). The district court also discussed Rule 404(b), finding that the evidence went to "willfulness, knowledge, and intent" so beyond "propensity which is the one that is excluded." (DE 1215 at 147). The district court considered the probative value "important in terms of establishing the association" and also the "dealing element." (DE 1215 at 147).

The government also sat as a witness Special Agent Christopher Quiroz, who at the time of Figueroa's arrest was team leader of the FBI San Juan's Evidence Recovery Team. (DE 1215 at 179). Since he had helped with executing the search warrant of Figueroa's residence, he primarily testified about the events after Figueroa's arrest and the evidence that was seized from Figueroa's house. (DE 1215 at 181-208; DE 1217 at 4-29).

The government introduced photos of the seized evidence (DE 1215 at 189-209) and of the Figueroa's house from the day the agents executed the search (DE 1215 at 181-82; DE 1217 at 8-29). At every step, Figueroa's counsel objected under Rule 403, arguing that there was danger or risk of "misleading the jury." (DE 1215 at 181-82, 190-205, 208; DE 1217 at 4-10). The district court admitted all the evidence. (DE 1215 at 182, 190-208; DE 217 at 4-10).

Once the government rested, the district court clarified its evidentiary ruling regarding the arrest evidence. (AA 126; DE 1217 at 64). The district court stated that it "had made on the record previous findings as to the evidence that we were to admit either as intrinsic evidence, that means direct evidence, or [Rule] 404 evidence, that it had the special relevance." (DE 1217

22

at 64). And that the "jury could easily infer that [the evidence] had probative value for reasons that are admissible under 404(b)" even if the actions had been subsequent to the dates in the indictment. (AA 126). The evidence seized at Figueroa's arrest was "seven days after the issuance of the indictment." (AA 126). And although Count Nine had a time frame, those dates were not a "parameter written in stone." (AA 126). So the ATH Móvil transactions after the dates in the indictment as well as the evidence from Figueroa's arrest were "admitted as intrinsic evidence." (AA 126). But the district court considered that "the most favorable approach with the jury" was to give a "cautionary instruction" as well that "if they consider that evidence as subsequent evidence [to the indictment] … they can only use it for the permissible purposes." (AA 126).

The defense at that time requested a judgment of acquittal under Federal Rule of Criminal Procedure 29. (DE 1217 at 66-67). The district court denied the Rule 29 motion, finding that there was "plenty of evidence from which the jury c[ould] easily conclude that the elements [of Count Nine] have been met." (DE 1217 at 69).

The court discussed the evidence presented and its significance at length. (DE 1217 at 69-77). It found that the video of Figueroa delivering the weapon was significant in establishing his willfulness since no one that saw it could "conceive that he was either confused as to what he was doing or that he was not willfully engaging and following the instruction of Grilla… at the time that he was to deliver the weapon." (DE 1217 at 69-70). That neither Figueroa nor Grilla had a license to sell firearms was unrebutted. (DE 1217 at 70).

It had also been established through the testimonies of agents investigating Los 27 and other members that Grilla was a member of Los 27 and that he sold weapons. (DE 1217 at 70-71). Figueroa was a "nonmember" and a person in the free community assisting his codefendant, Grilla. (DE 1217 at 70-71). Many of the elements of Count Nine were established through recorded phone conversations leading up to the sale and a record of subsequent money transfers from Figueroa. (DE 1217 at 70-71).

Regarding the fact that there were recurring sales, there was the testimony of Grilla's former cellmate who knew of "two or three other weapons dealings of direct transactions." (DE 1217 at 71). Valle had also

testified that Los 27 members about "to be freed from the institution" would not go into the free community without first resorting to Grilla for a weapon. (DE 1217 at 71). And that Los 27 members used guns to protect their neighborhoods and their friends and allies. (DE 1217 at 71). So Grilla's dealing extended beyond a "simple transaction" to distribution of weapons to those people, together with his outside person. (DE 1217 at 71-72). The jury could "conclude that the person assisting him on the outside was" Figueroa. (DE 1217 at 72).

The video spoke for itself about Figueroa being "ready and capable of delivering weapons" for money. (DE 1217 at 72). Figueroa had asked the confidential source to "test the weapon and to let him know." (DE 1217 at 73). Figueroa had also not only offered other weapons ("I have everything, 24s, 34s"), but he had even joked about being able to secure a nuclear bomb or a grenade. (DE 1217 at 72). That was corroborated by the seizure from Figueroa's residence where weapons parts sufficient to assemble other weapons were recovered. (DE 1217 at 73). So "certainly the jury c[ould] use [the arrest evidence] to infer knowledge and the objectives of the operation." (DE 1217 at 73).

There was also evidence that the sale was for profit since there were references in recorded conversations to "we can do business," there were discussions of prices, there was money transferred by the FBI confidential human source to Figueroa and the FBI had seized over $4,000 from Figueroa's house. (DE 1217 at 75-76). There were the text messages between the cooperator and Figueroa who instructed the cooperator to go through Grilla for more weapons. (DE 1217 at 75). And in the discussions leading up to the sale, Grilla had offered different types of weapons by photo. (DE 1217 at 73-74). He had also conveyed that he had the capability of receiving different weapons parts. (DE 1217 at 74). So the district court concluded that the government had "presented an overwhelming amount of evidence from which the jury c[ould] reasonably infer that all the elements of the offense" were met. (DE 1217 at 77).

Lastly, the parties gave their closing argument. (DE 83-110). Before the parties began, the district court addressed the jury, stating "Closing arguments do not constitute evidence." (DE 1217 at 82). The government argued that it had proved that, without a license to sell firearms, Figueroa helped and worked with Grilla, devoting "time, attention and labor" for the

purpose of "the repeated sale of firearms for profit." (AA 128; DE 1217 at 84). Grilla, as a member of Los 27, engaged in firearms trafficking. (AA 128). Grilla had coordinated a sale with Santiago through recorded calls. (DE 1217 at 86). Figueroa was recorded delivering the firearm and bullets, asking the confidential human source to test the gun, as well as offering to sell additional firearms. (AA 130-31; DE 1217 at 86-88). And there was a call leading up to the exchange where Figueroa "participates together with Grilla, Santiago, and the undercover." (DE 1217 at 87). Figueroa had a "stash of firearms and firearm parts" which the government argued "shows that he had the intent and also the opportunity to sell firearms." (DE 1217 at 86). Many of the parts had mailing materials which coincided with Grilla having explained that he and his *pana* assembled firearms that they received by the mail. (DE 1217 at 86-87).

After the sale, during which Figueroa received $1500, he sent $250 through ATH Móvil to a phone number with the message "Grilla." (DE 1217 at 92). When he was arrested, apart from a lot of firearms, Figueroa had $4,100 in cash in his house, which the government argued showed that he "wanted to sell firearms to make money." (AA 131). Moreover, there were

subsequent similar ATH Móvil transactions which showed, the recorded transaction "wasn't an occasional sale." (AA 132).

Many of the different types of guns that Figueroa offered to the confidential source were found in his house upon his arrest, which showed he was "willing and capable of selling firearms for profit." (AA 132). The "fact that he possessed that amount of firearms and parts goes to show willfulness." (DE 1217 at 97).

For its part, the defense, in its closing, questioned whether Figueroa was truly in the "business" of trafficking firearms since he had "only delivered a firearm" at a place he had not chosen. (DE 1217 at 99). And there was "no record of any other transaction." (DE 1217 at 102-03). Figueroa had not been responsible for coordinating the sale, which had been done by Grilla. (DE 1217 at 99).

The defense also attempted to discredit Santiago and Valle, who had long criminal histories as members of Los 27. (DE 1217 at 99-101). The defense highlighted that both Santiago and Valle participated in *canteos*, which were extortion and "based on a lie." (DE 1217 at 100).

The government rebutted that "just with the sale showing that that helps Grilla, that is enough to convict [Figueroa]." (DE 1217 at 110). But there was more – him offering to sell other types of guns, him with an "arsenal of firearms and firearm parts to make more firearms for sale" as well as the ATH Móvil transfers. (DE 1217 at 110).

At the conclusion of closing arguments, the district court gave the jury instructions. (DE 1217 at 111-130). Regarding the weapons seized from Figueroa's residence after his arrest, the court instructed:

> You may not use this evidence to infer that because of his character Mr. Figueroa carried out the acts charged in the case. You may consider this evidence only for the limited purpose of deciding whether the defendant had the state of mind or intent necessary to commit the crime charged in the indictment or whether the defendant had a motive or the opportunity to commit the acts charged in the indictment, or whether Defendant acted according to a plan or in preparation for the commission of a crime, or whether the defendant committed the acts that he is on trial for by accident or mistake. That is the knowledge.

(AA 135-36).

The jury unanimously found Figueroa guilty as to Count Nine. (DE 1217 at 133-36). On January 24, 2024, the district court sentenced Figueroa. (DE 1212). During the hearing, the court calculated a sentencing guideline

range of 210 to 262 months. (DE 1274 at 6). Nevertheless, because the statutorily authorized maximum imprisonment sentence (60 months) was less than the guideline range, the statutorily authorized maximum sentence was the guideline sentence. *See* USSG § 5G1.1(a). Ultimately, the court sentenced Figueroa to imprisonment of 60 months. (DE 1274 at 6).

This appeal ensued. (AA 36-37).

Figueroa's evidentiary challenges fail. Figueroa ignores and does not squarely challenge the district court's ruling admitting the ATH Móvil transactions and arrest evidence as intrinsic and, alternatively, as having special relevance under Rule 404(b). In doing so, he waives any argument to the district court's evidentiary ruling that the evidence is admissible for its intrinsic value, dooming his challenge.

And while Figueroa made a Rule 403 argument below, he did not challenge the evidence based on it being used for an impermissible purpose under Rule 404(b). Figueroa fails to acknowledge that the plain error standard applies to his unpreserved Rule 404(b) argument as to the arrest evidence, further and definitively waiting it.

Regardless, the district court did not err, much less plainly err, in admitting the evidence for its intrinsic value since it was probative of elements of firearm trafficking, such as willfulness and dealing for profit. Even assuming arguendo that the evidence was subject to Rule 404(b), it had special relevance and went to permissible purposes such as intent, ability, opportunity, motive, and knowledge. And the district court did not abuse its discretion in finding that the high probative value was not outweighed

31

by risk of prejudice. The district court also mitigated any risk by issuing a precautionary instruction with regards to the arrest evidence.

Figueroa's unpreserved challenge to the introduction of evidence of Los 27 and Grilla's bad acts also fails. Since Figueroa aided and abetted Grilla, who was the main firearms trafficker for Los 27, the jury needed to understand who Grilla was and what was his motive for gun trafficking. And the district court was careful in multiple instances by limiting the evidence introduced of Los 27's bad acts. The risk of prejudice was mitigated by the district court's instruction that any act by any individual other than Figueroa could not be taken as direct evidence against him or be taken as evidence of his bad character. Lastly, Figueroa cannot have it both ways – he used some of the evidence he now contests regarding Santiago and Valle – such as their prior criminal activity and involvement in *canteos* – to discredit them as witnesses both during cross-examination and closing arguments. In any event, Figueroa did not establish prejudice from any alleged error in the admission of the challenged evidence since the case against Figueroa was overwhelming.

Figueroa's challenge to the prosecutor's statements fails for the same reasons as his evidentiary challenges. Finally, Figueroa's argument under

the cumulative error doctrine does not carry the day because he merely

points to cumulative effects of non-errors.

**ARGUMENT**

## I. Figueroa's evidentiary challenges, most unpreserved, fail since the evidence was directly probative of Count Nine. The risk of prejudice did not outweigh its high probative value.

**Issue[6]**

Figueroa argues that inadmissible, irrelevant and unfairly prejudicial evidence was admitted as evidence of other acts under Rule 404(b). (AB 21). Figueroa challenges three main categories of evidence: (1) evidence of items seized during his arrest, (2) evidence of electronic money transfers after the dates listed in the indictment, and (3) testimony about Los 27's and Grilla's criminal activities. (AB 23-33). He argues that only his challenge as to the last category is unpreserved. (AB 23, 26, 30).

**Standard of Review**

This Court reviews "preserved evidentiary challenges[] for abuse of discretion." *United States v. Mare*, 668 F.3d 35, 38 (1st Cir. 2012). Even when "challenges of this sort are preserved, [this Court is] disinclined to find a District Court has abused its discretion in assessing the relevance or unduly prejudicial nature of testimony." *United States v. Castro-Caicedo*, 775 F.3d 93,

---

[6] On April 4, 2025, Figueroa voluntarily withdrew argument one of the opening brief.

34

101 (1st Cir. 2014); *see also United States v. Monteiro*, 871 F.3d 99, 111 (1st Cir. 2019) ("Determinations under Rule 403 require a balancing act that is a quintessentially fact-sensitive enterprise, and the trial judge is in the best position to make such factbound assessments.") (cleaned up); *United States v. Breton*, 740 F.3d 1, 14 (1st Cir. 2014) ("We give great deference to a district judge's balancing of probative value versus unfair prejudice.")

This Court reviews "unpreserved evidentiary challenges for plain error only." *United States v. Etienne*, 772 F.3d 907, 913 (1st Cir. 2014). To meet plain error, Figueroa would bear the "heavy burden of demonstrating (1) that an error occurred, (2) which was plain or obvious, (3) affected his substantial rights, and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

**Discussion**

The district court did not plainly err or abuse its discretion in admitting any of the three categories of evidence Figueroa challenges on appeal. Figueroa's Rule 404(b) argument is unpreserved because, although he challenged the evidence in the district court under Rule 403, he did not raise the Rule 404(b) claim he presses on appeal. And because on appeal Figueroa fails to argue plain error review regarding his Rule 404(b) claim, he

35

conclusively waived it. At any rate, Figueroa's claim also falters on the merits. The district court admitted the ATH Móvil transactions and arrest evidence as intrinsic, so not subject to Rule 404(b) limitations. Critically, Figueroa's opening brief does not squarely challenge the district court's ruling to that effect. He has thus waived any argument challenging that ruling. Because the evidence was intrinsic, Rule 404(b) is not implicated, and Figueroa's Rule 404(b) argument fails at the outset. Moreover, Figueroa cannot establish any error, let alone plain error, in the evidence of Grilla and Los 27's activities, which were necessary to establish the context and of operating the firearms trafficking operation. Figueroa did not establish that the district court abused its discretion in its Rule 403 ruling. In any event, any alleged evidentiary error is harmless.

### A. Figueroa has conclusively waived any challenge to the admission of the arrest evidence and ATH Móvil transactions.

#### 1. Figueroa's Rule 404(b) argument is unpreserved and he fails to acknowledge the plain error standard.

To start, Figueroa did not preserve the Rule 404(b) challenge he makes on appeal. "Arguments not raised in the district court cannot be raised for the first time on appeal." *United States v. Benjamin*, 49 F.4th 580, 584 (1st Cir. 2022) (cleaned up). Both in responding to the government's Motion *in Limine*

and during trial, Figueroa only challenged the ATH Móvil transactions and arrest evidence under Rule 403, arguing that it was unfairly prejudicial. (DE 1126 at 3-4; DE 1215 at 145; DE 1215 at 181-82; 190-205; 208; DE 1217 at 4-10). Because Figueroa did not raise before the district court the Rule 404(b) challenge he now makes, it is unpreserved. Considering that the government raised the potential Rule 404(b) issue before the district court (DE 990), that the district court not only ruled on the Motion *in Limine* (DE 1137) but also confirmed that ruling at various points during the trial (DE 1215 at 146-47; DE 1217 at 64-65), "plac[ing] the subject matter unmistakably on the table," and that during that entire process the defense remained silent on the issue and never questioned that the evidence had special relevance under Rule 404(b), the "defense's silence is reasonably understood only as signifying agreement that there was nothing objectionable" as to Rule 404(b). *United States v. Christi*, 682 F.3d 138, 142 (1st Cir. 2012). "So [Figueroa's] silence constitutes classic waiver, rather than forfeiture, which means that he cannot challenge the judge's ruling even on plain error." *United States v. Acosta-Colon*, 741 F.3d 179, 187 (1st Cir. 2013) (finding classic waiver where the judge put the exclusion matter squarely on the table for all the defendant's lawyers); *see also Christi*, 682 F.3d. at 142.

Moreover, on appeal he fails to argue the plain error standard with respect to his Rule 404(b) argument about the arrest evidence. (AB 23-26). By failing to "attempt to show how his claim[] satisfy[ies] the demanding plain error standard" he has doubly waived, providing an additional reason for this Court not to consider the argument. *Benjamin*, 49 F.4th at 585.

### 2. *Figueroa's challenge necessarily fails since he ignores that the district court ruled the evidence was admissible as intrinsic.*

The limitations of Rule 404(b) do not apply to the arrest evidence and the ATH Móvil transactions because the district court admitted this evidence as intrinsic to the charged crime. Intrinsic evidence is not subject to the limitations of Rule 404(b). *See United States v. Villarman-Oviedo*, 325 F.3d 1, 11 (1st Cir. 2003) (noting that where the challenged evidence is intrinsic to the crime charged in the indictment, Rule 404(b) is "really not implicated at all"). Because Figueroa does not challenge the district court's determination that both the arrest evidence and the ATH Móvil transactions were intrinsic evidence to Count Nine, his Rule 404(b) argument necessary fails.

The record shows that the district court admitted the evidence as intrinsic. Before the start of trial, the district court granted the government's Motion *in Limine* (AA 24-30), admitting both the ATH Móvil transactions

through July 2020 and the evidence of items seized when Figueroa was arrested "under Fed. R. Evid. 401 and 402 and alternatively under 404(b)." (DE 1137). The district court held that the disputed evidence related to "at least, one of the elements of the offenses to be proven by the government." (DE 1137). The district court reiterated that holding during trial to Figueroa's attorney's objections. (AA 112; DE 1215 at 146-47; DE 1217 at 64).

Figueroa's opening brief does not challenge the district court's ruling that the evidence was intrinsic. He thus waived any argument to the contrary. *See United States v. López*, 957 F.3d 302, 309 (1st Cir. 2020) ("[I]t is settled beyond hope of contradiction that arguments not made in an appellant's opening brief are deemed abandoned."). And he cannot raise them in a reply brief. *See United States v. Henry*, 848 F.3d 1, 7 (1st Cir. 2017) (explaining that when an appellant fails to make an argument in his opening brief, it is waived).That is fatal to Figueroa's Rule 404(b) claim because the rule is not implicated when evidence is intrinsic to the crime charged. *See Villarman-Oviedo*, 325 F.3d at 11.

3. ***Even setting aside waiver, because the evidence was probative of the elements of firearm trafficking, it was admissible as intrinsic.***

The evidence was admissible as intrinsic because it was directly probative of Count Nine. Intrinsic evidence includes prior bad acts, or in this case subsequent acts, that "go to an element of the charged offense." *United States v. Souza*, 749 F.3d 74, 84 (1st Cir. 2014) (citing *United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 50 (1st Cir. 2004). "Uncharged conduct is intrinsic and not barred by Rule 404(b) when it arises from the same series of transactions as the charged offense." *United States v. Ramirez-Frechel*, 23 F.4th 69, 76 (1st Cir. 2022).

The ATH Móvil transactions and arrest evidence are relevant to the charged crime – aiding and abetting in the business of dealing in firearms without a license. The district court instructed the jury that the government needed to establish that: (1) on or about the date set forth in the indictment the defendant engaged in the business of dealing in firearms; (2) the defendant did not have a license as an importer, manufacturer, or dealer in firearms; and (3) that the defendant acted willfully. (DE 1217 at 122); *see also Ramirez-Frechel*, 23 F.4th at 76 (cleaned up) ("A person engages in the business of dealing in firearms when he devotes time, attention, and labor to

dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms.")

To be engaged in the business meant that the person "devote[d] time, attention, and labor to dealing in firearms as a regular course of trade or business to predominately earn a profit through the repetitive purchases and resale of firearms." (DE 1217 at 123). Excluded from this category are people "who make occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sell all or part of their personal collection of firearms." *Ramirez-Frechel*, 23 F.4th at 76 (cleaned up). Because both the ATH Móvil transactions and the arrest evidence went to prove that Figueroa was "in the business of dealing in firearms with the purpose of making a livelihood and profit," the district court did not plainly err when it admitted it as intrinsic. *Id.* (cleaned up).

As discussed by the district court, the ATH Móvil transactions went to establish the "dealing element." (DE 1215 at 147). The subsequent transactions, similar to the one during the time period in the indictment, went to establish that Figueroa was not just an occasional seller. *See Ramirez-Frechel*, 23 F.4th at 76 (noting that uncharged conduct is intrinsic and not

barred by Rule 404(b) when it arises from the same series of transactions as the charged offense). Based on what the jury knew of the modus operandi between Grilla and Figueroa, it could infer that the subsequent transfers of money between Figueroa's phone number and another number with the message "Grilla" were for subsequent sales of firearms. The defense did not argue that those transfers were for any other, legitimate purpose.

Similarly, the arrest evidence went to show that Figueroa was engaged in the business of dealing in firearms. *See Souza*, 749 F.3d at 84-85 n.2. (explaining that evidence that would "satisfy the charged crime's specific intent element" is not governed by Rule 404(b)). The fact that Figueroa possessed a variety of guns, in different styles as well as firearm parts that could be assembled into many more guns, showed he was willfully engaged in the business of dealing in firearms. *See, e.g.*, *United States v. Breier*, 813 F.2d 212, 213–14 (9th Cir. 1987) (noting that the "engaged in the business of dealing in firearms" element may be established by proof that "the accused has guns on hand or is ready and able to procure them for the purpose of selling them from time to time to such persons as might be accepted as customers"). It also showed that Figueroa was more than an occasional seller. And it corroborated his own statements during the recorded sale that

he could deliver additional firearms or different styles and calibers. (DE 1154-20 at 1). Because the evidence went to establish the elements of Figueroa's offense, the district court correctly determined that the ATH Móvil transactions and the arrest evidence was intrinsic.

Figueroa's temporal challenge to the admission of the evidence fails. Even if the evidence was subsequent to the dates in the indictment, as stated by the district court, those dates were not to be "considered as the parameter written in stone." (DE 1217 at 65); *see United States v. Lugo-Guerrero*, 524 F.3d 5, 14 (1st Cir. 2008) (finding that evidence having occurred fifteen months before the charged offense was "not that distant in time"); *Mare*, 668 F.3d at 41 (finding that five years did not diminish the evidence's probativeness). The ATH Móvil transactions were "certainly" proximate "to the time frame in the indictment" since it was only "a few months after." (DE 1215 at 147). And the arrest evidence, which was the most remote to the dates in Count Nine, was from "seven days after the issuance of the indictment." (DE 1217 at 65).

4. ***Even assuming arguendo Rule 404(b) applied to the evidence, Figueroa's challenge fails because it could have been introduced for permissible purposes such as intent, opportunity, and motive.***

Even assuming, contrary to the record, that Rule 404(b) governed the admissibility of the evidence, the district court did not plainly err in alternatively admitting the evidence under Rule 404(b).[7] This Court applies a two-part test to determine the admissibility of evidence under Rule 404(b). *United States v. Robles-Alvarez*, 874 F.3d 46, 51 (1st Cir. 2017). "First, the trial judge must determine whether the evidence in question is offered for any purpose other than solely to prove that the defendant had a propensity to commit the crime in question." *Id.* (citing *United States v. Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995)). Rule 404(b) provides that while evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity, it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). If the "special relevance" of the evidence is established, "the district court

---

[7] Because the evidence was admissible as intrinsic evidence, any error under Rule 404(b) would be harmless. However, for completeness, the government addresses the merits of Figueroa's admissibility argument.

must then apply Rule 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Robles-Alvarez*, 874 F.3d at 51(cleaned up).

The district court correctly determined that the evidence had special relevance. As the district court held, the ATH Móvil transactions went to permissible purposes such as knowledge and intent. (DE 1215 at 147); *see, e.g., United States v. Ortiz-Islas*, 829 F.3d 19, 27 (1st Cir. 2016) (disposing of argument that transaction was outside period in the indictment because even if not intrinsic, the evidence was admissible under Rule 404(b)). Because the jury could infer that these subsequent transfers were for other sales, they went to show he knew about the firearms trafficking and intended to engage in such transactions on behalf of Grilla.

Similarly, as stated by the district court "from the seizure from the residence where he was arrested … certainly the jury can use to infer knowledge and the objectives of the operations." (DE 1217 at 73). Here the evidence seized during the arrest, was not a random "crime from which could be inferred a propensity on his part," it helped prove the identity and "illuminated what had been going on… a course of conduct that was firmly shown through overwhelming evidence." *Ortiz-Islas*, 829 F.3d at 27. The

government and the district court both discussed how the seized evidence was consistent with what was established through the recordings of both Figueroa and Grilla. For example, many of the firearm types that Figueroa offered to the confidential informant on video matched what was seized. (DE 1217 at 72-73; AA 132). Grilla had discussed how he and his *pana* received firearm parts by mail and assembled them, which was entirely consistent with the many firearm parts and drill bits that were in Figueroa's home, some of them found in mailers. (DE 1217 at 86-87). Since the evidence went to a permissible purpose, it would not be excluded by Rule 404(b).

5. ***The district court did not abuse its discretion in finding the evidence's probative value was not outweighed by the risk of prejudice.***

The ATH Móvil transactions and the arrest evidence were not unfairly prejudicial. "Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Rathbun*, 98 F.4th 40, 51 (1st Cir. 2024). "The balancing act that the rule demands is a quintessentially fact-sensitive enterprise, and the trial judge is in the best

position to make such factbound assessments." *See Mare*, 668 F.3d at 39 (cleaned up)

As stated by the district court (*see* DE 1137), "the law shields a defendant against unfair prejudice, not against all prejudice." *United States v. Smith*, 292 F.3d 90, 99 (1st Cir. 2002) (cleaned up). The ATH Móvil transactions were not unduly prejudicial. They were a mere continuation, in the months directly following the dates of the indictment, of money transfers between Figueroa's phone number and numbers associated with Grilla. *See Mare*, 668 F.3d at 41 (finding that passage of five years did not diminish the evidence's probativeness since "there is no absolute rule governing the number of years that can separate offenses"). Yet, as determined by the district court, the probative value of the ATH Móvil transactions was "important in terms of establishing the association … as well as to the dealing element." (DE 1215 at 147); *see Mare*, 668 F.3d at 39 ("only rarely and in extraordinarily compelling circumstances will [this Court], from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect").

The arrest evidence had a high probative value that also did not outweigh the risk of unfair prejudice. As stated above, the arrest evidence,

tied directly to Figueroa's recorded statements where he offered additional guns of different sizes and calibers. It went to establish not only the dealing and intent elements of the charged crime, as the district court found the "jury could [also] easily infer that [the contested evidence] had probative value for reasons that are admissible under [Rule] 404(b)." (DE 1217 at 64-65). It established that Figueroa, having eight guns and enough firearm parts to assemble three to seven additional guns, had the opportunity to traffic in firearms. And that given the over $4,000 seized in cash, his intent was profit driven. It also went to show that Figueroa was not executing the recorded sale by mistake, but that he was indeed, Grilla's outside person. Given the highly probative value of the evidence, the district court did not abuse its discretion when it dismissed Figueroa's Rule 403 objections.

Lastly, Figueroa's "argument fails to sufficiently credit the precautionary measures the district court thoughtfully undertook to carry out what it viewed as its Rule 403 balancing responsibilities." *Rathbun*, 98 F.4th at 52. Even though the district court reiterated that it admitted the ATH Móvil transactions and the arrest evidence as intrinsic, it found that the "most favorable approach with the jury" was to give "a cautionary instruction… [as to the arrest evidence] that if they consider that as evidence

as subsequent evidence… they can only use it for the permissible purposes." (DE 1217 at 65). So any risk of unfair prejudice from the arrest evidence was adequately mitigated by the district court's limiting instruction. *see United States v. Taylor*, 284 F.3d 95, 104 (1st Cir. 2002) (finding that "court's cautionary instructions were appropriate and addressed any such risk"). The district court did not abuse its discretion in rejecting Figueroa's Rule 403 arguments.

> **B. Figueroa failed to establish that the district court's admission of evidence of Los 27 and Grilla's bad acts was plain error because the evidence was necessary to establish the context of Figueroa's crime.**

Figueroa concedes that this claim of error is unpreserved and thus subject to plain error review. (AB 26). On appeal, he takes issue with: (1) Santiago's testimony concerning what he knew of Los 27; (2) Valle's testimony about Los 27, including his own role in their activities such as *canteos* and what he knew about Grilla. (AB 26-27). None of the challenged statements amount to error, let alone plain.

The evidence was relevant because it established the context within which Figueroa trafficked in firearms. "Relevant evidence is any evidence that has a tendency to make a fact that is of consequence in determining the

action more or less probable than it would be without the evidence." *United States v. Ramos-Baez*, 86 F.4th 28, 68 (1st Cir. 2023).

The government's theory was that Figueroa, although not a Los 27 member, was the person in the free community that helped, or aided and abetted Grilla execute sales. A person aids and abets another if "he consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal accomplish it." *United States v. Rodríguez-Torres*, 939 F.3d 16, 43 (1st Cir. 2019) (cleaned up). Grilla was known to other Los 27 members, who were his primary customers of guns, as the "point of contact for firearms trafficking." (DE 1285 at 8). Because of how they operated, Grilla due to his position within Los 27 would negotiate sales that only Figueroa could physically execute in the free community. (AA 88). To explain the enterprise, the government needed to introduce evidence about who Grilla was, how he had the opportunity to traffic in drugs, and who were his and Figueroa's customers. *See Ramos-Baez*, 86 F.4th at 68 (allowing evidence that showed person was known "by witnesses to be serving… as a conduit between" Los Neta, an organization operating throughout Puerto Rico's prisons, and sources from which that entity obtained contraband).

Valle's testimony was necessary to identify Grilla, because although Santiago negotiated the sale with him, they had not met in person. (AA 85; DE 1215 at 106).

By Grilla and Figueroa's own design, the operations of Los 27 were inextricably linked with their gun trafficking business, and so background information about Los 27 and Grilla's role in the organization was relevant. *See United States v. Flemmi*, 402 F.3d 79, 87 (1st Cir. 2005) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency."). Figueroa himself placed Grilla at the center of the business when he instructed Santiago to contact Grilla for any additional firearms. (DE 1154-13).

Furthermore, the evidence was not unduly prejudicial. *See Ramos-Baez*, 86 F.4th at 69 (explaining that a district court "is not required to scrub the trial clean of all evidence that may have an emotional impact."). Figueroa himself believed that the weakness in his case was that a jury would not believe these transactions were being carried on from prison through illegal cellphones. (DE 1283 at 11-12) ("[Y]ou believe that no one will believe or it

will be capable of believing that from an institution you had a phone from which to make or have a conversation with someone in the outside world"). So, it was highly probative of the charged crime and important for the government to establish how Grilla was known by other Los 27 members as in charge of gun trafficking for the organization. *See Ramos-Baez*, 86 F.4th at 68 (finding evidence that Neta members could arrange from trafficking of drugs even while imprisoned relevant to charged offense and admissible). And that Grilla acted as a supplier mainly to other members with the help of an outside person that would receive firearm parts by mail on his behalf and who would execute them on his behalf.

Contrary to Figueroa's assertion, the district court was careful in the evidence regarding Los 27 that it allowed to be introduced. *See Rathbun*, 98 F.4th at 53 (crafting evidentiary limitations where evidence was "unavoidably woven throughout the basic fabric of the case's tapestry."). In multiple instances the district court limited the scope of the testimony to exclude evidence of acts by Los 27 other than firearms trafficking. (*See* DE 1144 at 30-31) (instructing the prosecution "not go into other areas like violent actions" and cautioning to "avoid any unnecessary spillover"); (*see also* DE 1144 at 45) (limiting FBI agent's testimony "on the [Los] 27's dealings

and doings… to avoid damaging the case or any spillover."). Notably, the district court also issued a pointed limiting instruction at the outset of trial, that any actions by other individuals were "not to be taken directly as evidence against this defendant." (DE 1144 at 26-27). So any risk of prejudice to Figueroa was tempered by the court's precautionary measures and limiting instruction. Figueroa's agreement with the court's instructions, without any objection, showed that remedy cured any potential prejudice. After all, juries are presumed to follow the district court's instructions. *United States v. Rodríguez*, 675 F.3d 48, 63 (1st Cir. 2012).

Lastly, the evidence of both Santiago and Valle's criminal convictions was impeachable evidence that the government anticipated would be brought out in cross-examination. A witness may be impeached with prior crimes, especially if they involve a dishonest act or false statement. Fed. R. Evid. 609. Some of those criminal acts were also the basis for their cooperation. (DE 1215 at 114-16). So the evidence was not only relevant in establishing how they had firsthand knowledge of Figueroa and who he was aiding and abetting (Grilla), but was also impeachment evidence that the government could make a strategic choice to bring out during direct examination in an attempt to limit the effect on cross-examination.

Both Santiago and Valle were also cooperators who did so with the expectation of leniency in their own cases, which could also be used to impeach their credibility as witnesses. (DE 1144 at 54-62; DE 1215 at 25-28, 114-16); *see Stephens v. Hall*, 294 F.3d 210, 224 (1st Cir. 2002) ("pending charges are relevant to show pro-government bias on the part of the testifying witness, on the theory that the witness might tailor her testimony to please the prosecutor, in exchange for a promise of leniency on the pending charges."). So both witnesses could be impeached with their significant criminal convictions, especially their involvement in *canteos*, and their cooperation with the government. Indeed, Figueroa extensively cross-examined both Santiago and Valle with their prior convictions, with particular emphasis on their participation in *canteos*, which the defense characterized as fraud, extortion and ultimately, lies. (DE 1215 at 17, 19-23, 31, 128-32, 135-36). In his closing argument, Figueroa discredited them for the same reasons. (DE 1217 at 99-101). Santiago and Valle were also cross-examined based on their cooperation. (DE 1215 at 25-28; DE 1215 at 133). Not only did Figueroa fail to object to the introduction of this evidence, he used the evidence to discredit the witnesses. Figueroa cannot belatedly challenge

the evidence and have it both ways. Figueroa failed to prove any abuse of discretion, much less plain error.

**C. Because the case against Figueroa was overwhelming, any evidentiary error was harmless.**

Even if we assume arguendo that the district court erred in admitting any of the challenged evidence, it should be treated as harmless. "An evidentiary error will be treated as harmless only if it is highly probable that the error did not contribute to the verdict." *Rathbun* 98 F.4th at 60. This Court must analyze from "the record as a whole . . . the probable impact of the improper evidence upon the jury." *Id*. In doing so, this Court considers the "the centrality of the tainted material, its uniqueness, its prejudicial impact, the uses to which it was put during the trial, and the relative strengths of the parties' cases." *Id*. at 60-61 (cleaned up).

Any error in admitting evidence is harmless because the government presented a solid, robust case against Figueroa. "The crucial factor is typically the strength or weakness of the government's evidence of guilt less the improperly admitted evidence." *Rathbun* 98 F.4th at 61. In this case the government established the engaging in a business and willfulness elements through direct evidence, including the recorded phone calls leading up to

the sale and the video recording of Figueroa delivering the gun and ammunition, taking the negotiated sales price, offering the confidential human source many types of additional firearms, and asking her to test the one he had just delivered quickly. The jury could easily infer that he engaged in the transaction for profit since in asking the confidential human source to test the gun, Figueroa cared about the satisfaction of the customer. As discussed by the district court, the fact that Figueroa and Grilla lacked a license, established by the ATF certification, was unrebutted.

The recordings that the government introduced were the central evidence, establishing the elements of the crime. As the district court discussed when it denied Figueroa's Rule 29 motion, the video was significant in establishing willfulness since no one that saw it could "conceive that he was either confused as to what he was doing or that he was not willfully engaging and following the instruction of Grilla… at the time that he was to deliver the weapon." (DE 1217 at 69-70). The video also established that Figueroa was selling the firearm for profit, taking $1,500 in cash, and that it was not an occasional sale, since he offered a variety of additional firearms and asked the client to test the product. In denying Figueroa's Rule 29 motion, the district court concluded that the government

had "presented an overwhelming amount of evidence from which the jury c[ould] reasonably infer that all the elements of the offense" were met. (DE 1217 at 77). Thus, given the strength of the government's evidence of guilt, independent of the contested items, the admission of that evidence, even if error, was harmless.

**II. Figueroa cannot establish any error, let alone plain error, in the prosecutor's closing statements.**

**Issue**

Figueroa argues that the government improperly argued other acts showed propensity, divesting Figueroa of a fair trial. (AB 34-46). He concedes that his arguments are unpreserved. (AB 37).

**Standard of Review**

Figueroa concedes that because there were no timely objections during or after the closing argument, he must establish plain error. *Rodríguez*, 675 F.3d at 64. This standard is "exacting" and reserved for "blockbuster" errors. *Id.*

**Discussion**

Figueroa's argument that the prosecutor's statements were improper is without merit. The first step in reviewing a claim of improper closing argument is to determine whether the statement was improper. *See Rodriguez*, 675 F.3d at 62. "If so, [this Court] will only reverse if the misconduct 'so poisoned the well that the trial's outcome was likely

affected.'" *United States v. Rosario-Perez*, 957 F.3d 277, 299 (1st Cir. 2020) (quoting *United States v. Vázquez-Larrauri*, 778 F.3d 276, 283 (1st Cir. 2015).

Figueroa's claims do not overcome this first hurdle. Like in his evidentiary challenges, Figueroa ignores that the district court admitted the arrest evidence and ATH Móvil transactions as intrinsic. Thus, the government was allowed to use that evidence to establish the elements of Count Nine. The limiting instruction that Figueroa cites was only a precautionary measure taken by the district court in case the jury were to take the arrest as evidence of subsequent acts. (DE 1217 at 65). It did not affect or undue the district court's prior ruling that the evidence was intrinsic. (DE 1137; DE 1217 at 64-65). Figueroa himself notes that "the government referred to this evidence as if admitted as intrinsic to the offense charged." (AB 43). Indeed, the district court had admitted it as intrinsic so it was not improper; on the contrary, it followed that the government could discuss that evidence in the context of the elements of the offense.

Figueroa particularly questions the government's statement that "[he] was willing and capable of selling firearms for profit. That is who the defendant is." (AB 44). "In assaying the appropriateness of a prosecutor's remarks, context frequently determines meaning." *United States v. Sepulveda*,

15 F.3d 1161, 1187 (1st Cir. 1993). Read in context, the comment meant "that is who the defendant is: [a dealer engaged in the business of dealing in firearms]." That was proper, especially since it directly referred to an element of the offense. The government had to prove Figueroa's status as a dealer engaged in the business of dealing firearms. *See United States* v. *Wilmoth*, 636 F.2d 123, 125 (5th Cir. 1981) ("In order to show a violation of 18 U.S.C. § 922(a)(1), the Government must prove the status of the accused as one engaged in the business of dealing in firearms."). The prosecutor's statement referred to that status. Contrary to Figueroa's newly-unveiled interpretation, it was not a comment on "Figueroa's character as a person." (AB 40). This Court has reiterated that it "will not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Vázquez-Larrauri*, 778 F.3d at 286. This is especially so when the opposing party failed to contemporaneously object to the prosecutor's remark. *See id.*; *see also United States v. Taylor*, 54 F.3d 967, 979 (1st Cir. 1995) ("We are especially reluctant to fish in the pool of ambiguity when the complaining party failed to bring a dubious comment, easily corrected on proper notice, to the

immediate attention of the trial court.") (cleaned up). The government was merely emphasizing that Figueroa was indeed a firearms trafficker.

Even if we ignore the foregoing and assume arguendo the prosecutor's closing statement was improper, Figueroa's claim still fails, as he failed to meet his burden under plain-error review's third and fourth prongs. The record establishes there was no prejudice from the government's statements. *See Rodriguez*, 675 F.3d at 61 (explaining that even if a closing statement is improper, it must have resulted in prejudice to the defendant). The prosecutor's closing and rebuttal did not poison the well so that the outcome of trial was affected. *United States v. Maldonado-Pena*, 4 F.4th 1, 48 (1st Cir. 2021). In making this analysis, this Court considers the following four factors, "(1) the severity of the prosecutor's misconduct, including whether it was deliberate or accidental; (2) the context in which the misconduct occurred; (3) whether the judge gave curative instructions and the likely effect of such instructions; and (4) the strength of the evidence against the defendant." *Id.*

For starters, Figueroa's brief ignores this Court's precedent and fails to argue how the four factors to consider in making a misconduct claim apply to his case. (AB 34-46). His lack of developed argumentation constitutes

waiver. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that an appellant waives an argument when he merely mentions and argument and fails to "put flesh on its bones"). For this reason alone, Figueroa's claim should be dismissed.

Even setting aside Figueroa's waiver, none of the factors support reversal. The prosecutor did not engage in misconduct, much less severe misconduct, because, as stated above, he was using the evidence consistently with the district court's ruling. In closing argument, the prosecutor is allowed, indeed expected, to argue the case. *United States v. Cotter*, 425 F.2d 450, 452 (1st Cir. 1970). The whole point of argument is to persuade. *See United States v. Mount*, 896 F.2d 612, 626 (1st Cir. 1990). In persuading the jury, the prosecutor may suggest inferences that the jury might draw from the evidence as long as he does not urge his own opinion on the jury. *United States v. Smith*, 982 F.2d 681, 683 (1st Cir. 1993). As he was allowed to do by the district court's ruling that the arrest evidence and ATH Móvil transactions were intrinsic, the prosecutor tied the evidence to the elements of the crime and how the evidence presented corroborated each other. For example, the recorded statements offering certain firearms matched the guns

seized during the arrest. So did the additional ATH Móvil transactions were consistent with the additional cash seized from his home.

The second factor, context, also favors the government. In making the statements during closing, the government was rebutting Figueroa's counsel's argument that Figueroa was not truly engaged in the business of trafficking firearms because he had "only delivered a firearm" and there was no record of any other transaction. (DE 1217 at 99, 102-03). "The prosecutor is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *United States v. Wall*, 130 F.3d 739, 745 (6th Cir. 1997) (cleaned up). Moreover, "[c]ourts are reluctant to find [plain] error where the prosecutor's remarks were isolated and made to rebut specific statements by defense counsel." *United States v. Whiting*, 28 F.3d 1296, 1302 (1st Cir 1994). So, taken in context, the prosecutor pointed to evidence that showed the firearm sale was not an isolated event, which he was entitled to do. The other two factors also weigh heavily against reversal. The court gave limiting instructions. *See supra* at 48-49, 52-53. And the evidence establishing Figueroa's guilt was overwhelming. *See supra* at 55-57.

Even if the Court concludes that the government's comment was somehow improper and the district court committed clear error, Figueroa is

still not entitled to relief because he has not demonstrated that the comment affected his substantial rights or "seriously impaired the fairness, integrity, or public reputation of the judicial proceeding." *United States v. Henderson*, 320 F.3d 92, 102 (1st Cir. 2003). The prosecutor's remarks, even if erroneous, would have necessitated reversal of the verdict only if Figueroa had shown, at the very least, that they affected the outcome of his trial. *See United States v. Van Anh*, 523 F.3d 43, 55 (1st Cir. 2008). He fell short of doing so because even absent the closing statements, the evidence presented at trial overwhelmingly established his guilt. *See supra* at 55-57.

**III. Figueroa's unpreserved cumulative errors argument also fails since, even if we overcome multiple waivers, he cannot establish cumulative error through non-errors.**

**<u>Issue</u>**

Figueroa argues that individual errors, even if insufficient in themselves, in the aggregate warrant a new trial. (AB 46-47).

**<u>Standard of Review</u>**

Figueroa's claim of cumulative error, unveiled for the first time on appeal, is also reviewed for plain error only. *United States v. Casey*, 825 F.3d 1, 22 (1st Cir. 2016) (reviewing unpreserved claim of cumulative effect of trial errors for plain error only).

**<u>Discussion</u>**

Figueroa makes a separate and distinct, final attempt, cumulative error argument. Figueroa never made these arguments during trial. Because these claims were not preserved in the district court, Figueroa has the burden of showing plain error. *See Rodríguez*, 675 F.3d at 61; *Casey*, 825 F.3d at 22. Figueroa, however, has failed to recognize his burden, let alone establish the four prongs of plain error. (AB 46-47). Figueroa has failed to offer any developed argumentation regarding the prongs of plain error, thereby

waiving his claim. *Benjamin*, 49 F.4th at 585; *United States v. Pabon*, 819 F.3d 26, 33 (1st Cir. 2016).

Regardless, as discussed, *see supra* at 59-61, Figueroa has failed to show any error in the prosecutor's closing arguments, let alone a series of errors that prejudiced him. "[C]umulative-error analysis is inappropriate" where the appellant "complains of the cumulative effect of non-errors." *United States v. Stokes*, 124 F.3d 39, 43 (1st Cir. 1997); *see also United States v. García-Sierra*, 994 F.3d 17, 35-36 (1st Cir. 2021) (concluding that new trial was not warranted because each of defendant's individual evidentiary errors were harmless and therefore collectively, they were also harmless); *Flemmi*, 402 F.3d at 95 n.23 ("[B]ecause we have found that none of [the defendant's] individual complaints resulted in substantial prejudice and that most are completely without merit, we reject the final contention that his conviction was tainted by cumulative error.") (quoting *United States v. DeMasi*, 40 F.3d 1306, 1322 (1st Cir. 1994)). Here, each of the alleged evidentiary errors are either not errors or, if so, harmless ones. Hence, Figueroa cannot show any error, much less cumulative plain error and his conviction should be affirmed.

## CONCLUSION

For the foregoing reasons and authorities, this Court should affirm Figueroa's conviction and the district court's judgment.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this day of May 19, 2025.

W. Stephen Muldrow
United States Attorney

Juan Carlos Reyes-Ramos
Assistant United States Attorney
Chief, Appellate Division

/s/ Jeniffer Vélez-Pérez
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 772-3940
Fax (787) 771-4050

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

**Certificate of Compliance with Rule 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in Fed. R. App. P.
   32(a)(7)(B) because:

   ☑    the brief contains <u>12,979</u> words, excluding the parts of the brief
   exempted under Fed. R. App. P. 32(f), *or*

   ☐    the brief uses a monospaced typeface and contains _____
   lines of text, excluding the parts of the brief exempted under Fed.
   R. App. P. 32(f).

2. This brief complies with the typeface requirements in Fed. R. App. P.
   32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6)
   because:

   ☑    the brief has been prepared in a proportionally spaced typeface and,
   except for emphases, in a plain, roman style using <u>Book Antiqua</u> in
   <u>14 point</u>, *or*

   ☐    the brief has been prepared in a monospaced typeface using
   _____ with _____.

Dated: May 19, 2025         /s/ Jeniffer Vélez-Pérez
                                    Assistant United States Attorney

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on May 19, 2025, I filed the above brief with the Clerk of Court using the Court's electronic-filing system, which sent a notification of the filing to the appellant through his attorney of record, a registered user of the system.

/s/ Jeniffer Vélez-Pérez
Assistant United States Attorney